UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ZIDNEY ZUNIGA,** | § | |
| **TDCJ No. 02190818,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-19-CA-0487-FB** |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are *pro se* petitioner Zidney Zuniga's Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254 (ECF No. 1) and respondent Lorie Davis's Answer (ECF No. 17)

thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes

petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a

certificate of appealability.

## I. Background

The facts of petitioner's offense were accurately summarized by the Texas First Court of

Appeals on direct appeal:

> On June 18, 2015, [petitioner] and his girlfriend Crystal Ritchie visited
> Bluebonnet Chrysler Dodge in Comal County, Texas. They shopped the preowned
> inventory with a salesperson, selected a 2010 truck, and signed a purchase order for
> the truck. Regarding the truck's $21,000 price tag, [petitioner] told Bluebonnet's
> finance manager, Bradley Jorgensen, that he had secured a loan from an outside
> lender and provided a fax number for drafting instructions. On [petitioner]'s pledge
> of independent financing, Bluebonnet handed over the keys and [petitioner] drove the
> truck off the lot. When Jorgensen contacted the purported lender to fund the sale, he

discovered that [petitioner] had not made any arrangements to pay for the truck. Bluebonnet's preowned sales director, Taylor Atkins, mailed letters to [petitioner] and Ritchie demanding the truck's return.  He sent the demand letters to the address [petitioner] and Ritchie listed on the purchase order, but those letters were undeliverable.  Atkins ultimately reported the stolen truck to police.

Around the same time, Detective R. Wagner of the Selma Police Department was investigating a similar car theft at Gillman Honda in Guadalupe County, Texas. In that incident, which occurred only six days before the Bluebonnet theft, a man took a Gillman car after misrepresenting that he had a credit-union loan.  [Petitioner] had been identified as a suspect.

As part of his investigation, Wagner ran a criminal-history search using [petitioner]'s name and discovered that [petitioner] also was connected to the Bluebonnet theft.  So Wagner ran another search—this time using the Bluebonnet truck's description and license-plate and vehicle-identification numbers—and found the truck registered to a man named Ramon Recio.  Wagner contacted Recio, who stated that he had paid a Craigslist seller $9,800 for the truck.  After confirming that Recio's truck and the Bluebonnet truck were indeed the same truck, Wagner took custody of the truck.  The truck eventually was returned to Bluebonnet after a hearing to determine ownership.

Wagner also succeeded in locating the Gillman car, which he found by using the telephone number [petitioner] listed on Craigslist.  A car-theft task force in Corpus Christi—where the Gillman car was posted for sale—recovered the car and executed a warrant for [petitioner]'s arrest.  Both [petitioner] and Ritchie were indicted for theft in connection with the Bluebonnet incident.

*Zuniga v. State*, No. 01-18-00061-CR, 2018 WL 6205870 at *1 (Tex. App.—Houston [1st

Dist.], Nov. 29, 2018, pet. ref'd); (ECF No. 18-11).  In November 2017, a Comal County jury found

petitioner guilty of theft and sentenced him to nine years of imprisonment.  *State v. Zuniga*, No.

CR2016-284 (207th Dist. Ct., Comal Cnty., Tex. Nov. 28, 2017); (ECF No. 18-3 at 8-10).

Petitioner appealed his conviction and sentence, arguing the trial court erred by (1) refusing

to grant a mistrial after one of the State's witnesses, Ramon Recio, gave allegedly false testimony,

and (2) admitting extraneous-offense evidence.  (ECF No. 18-9).  In an unpublished opinion, the

Texas First Court of Appeals rejected petitioner's arguments and affirmed his conviction and

sentence. *Zuniga v. State*, 2018 WL 6205870; (ECF No. 18-11).  Petitioner then filed a petition for

discretionary review with the Texas Court of Criminal Appeals (TCCA), seeking review of the first claim he raised on direct appeal.  (ECF No. 18-14).  The TCCA refused his petition on March 20, 2019.  *Zuniga v. State*, No. 0144-19 (Tex. Crim. App.).

Petitioner has not filed a state habeas corpus application challenging the constitutionality of his state court conviction and sentence.[1]  Instead, petitioner initiated the instant federal proceedings on April 29, 2019.  (ECF No. 1 at 23).  In his petition for federal habeas corpus relief, petitioner raises the same two allegations that he raised during his direct appeal proceedings:  (1) the trial court erred by refusing to grant a mistrial after the State failed to correct allegedly false testimony given by one of the State's witnesses, and (2) the trial court erred by improperly admitting evidence of an extraneous offense.  In her answer, respondent contends relief is precluded under the AEDPA because his second allegation is unexhausted and procedurally barred and the state court's adjudication of his first allegation was reasonable.  (ECF No. 17).

## II. <u>Standard of Review</u>

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on

---

[1]     *See* http://www.research.txcourts.gov, search for "Zuniga, Zidney" last visited July 30, 2020; *see also* ECF No. 17-2.

federal court relitigation of claims already rejected in state proceedings.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous.  *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself.  *Richter*, 562 U.S. at 102.  Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold."  *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief.  *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III.  Analysis

#### A.  The False-Testimony Claim (Claim 1).

Petitioner first contends the trial court erred by refusing to grant a mistrial concerning the prosecution's failure to correct misleading testimony given by Ramon Recio, a prosecution witness.  According to petitioner, the prosecution learned that Mr. Recio's testimony was false only after Mr.

Recio testified, but made no attempt to discharge its duty to correct the misleading testimony through further evidence or argument once the error was discovered. This allegation was rejected by the state appellate court on direct appeal and again by the TCCA when it refused petitioner's PDR. As discussed below, petitioner fails to show that either court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

### 1.     Relevant Facts

The prosecution's case against petitioner was established through the testimony of six witnesses: Detective Wagner on his investigation, Brad Jorgensen and Taylor Atkins concerning the Bluebonnet truck theft, Vernon Quesnot on the Gillman car theft, Crystal Ritchie on both thefts, and Ramon Recio on how he came to possess the Bluebonnet truck. During petitioner's direct appeal proceedings, the Texas First Court of Appeals accurately summarized the issues concerning Ramon Recio's testimony:

> When Ritchie testified, she confirmed many of the circumstances described by Jorgensen, Atkins, and Quesnot. Although she had no agreement with the State regarding her own pending theft charge, she confessed that she and [petitioner] developed a plan to avoid paying for a car by telling the dealer that [petitioner] had independent financing. According to Ritchie, [petitioner] knew their plan would work because he had worked at a car dealership. She testified that she and [petitioner] executed the plan twice—once, at Gillman when they needed a car with a full tank of gas to get around and, then again, at Bluebonnet.

> Ritchie also testified about what occurred after the Bluebonnet theft. Not long after she and [petitioner] took the truck, [petitioner] posted it for sale on Craigslist. Two men responded to the posting and, according to Ritchie, paid $1,500 cash for the truck. When shown a bill of sale that purported to memorialize the Craigslist transaction, Ritchie denied that the signature on the document was [petitioner]'s.

> Given Ritchie's testimony suggesting that the bill of sale was fraudulent, the trial court informed Recio outside the jury's presence of his Fifth Amendment right against self-incrimination. Recio acknowledged his right and proceeded to tell the

jury that he bought a truck off Craigslist that police later determined was stolen. When asked if he remembered the Craigslist seller's name, Recio responded that it "started with a Z, Zuniga or Zunia, I can't remember." But he recalled that there were four people at the sale: "the seller, a lady, and another person with the guy, and myself." Recio stated that he paid $9,800 in cash for the truck but did not receive a title from the seller.

On cross-examination, Recio reviewed documents purporting to prove up the sale and showing his attempt to register the car in his name only a few days after it was stolen, including the bill of sale about which Ritchie had testified, a surety bond, and a power of attorney. Recio denied that he created the bill of sale fraudulently after the fact. He recalled instead that the bill of sale was prepared contemporaneously with the sale and that [petitioner] had signed it. This line of questioning was supported by Detective Wagner's testimony expressing doubts about the validity of the sale to Recio as well as Recio's own testimony that he did not attend the ownership hearing for the Bluebonnet truck after it was seized.

Before the State rested, the prosecutor informed the trial court and [petitioner] that Ritchie had observed Recio outside the courtroom and disclosed to the State's investigator that he was not the man who bought the Bluebonnet truck from [petitioner]. She believed the two men who responded to [petitioner]'s Craigslist post were younger than Recio. Although Ritchie apparently was still in the courthouse and Recio was ordered by the trial court to return, neither of them was asked back into the courtroom to give sworn statements regarding Ritchie's disclosure. As a result, the only details in the record come from the State investigator's text message to the prosecutor, which reads: "Ritchie is saying that Recio was not the guy they sold the vehicle to that day."

[Petitioner] moved for a mistrial, arguing that Recio's potentially false testimony was so prejudicial that it could not be cured with an instruction. The trial court declined to grant a mistrial because neither party had rested and both Ritchie and Recio were available to give further, clarifying testimony. [Petitioner], however, elected not to recall either Ritchie or Recio because, in his counsel's view, "there would be no real advantage" to doing so. When the jury returned to the courtroom, the parties rested.

In closing argument, the State asked the jury to consider all the evidence—including the Gillman-car-theft evidence and Recio's testimony—that [petitioner] took the Bluebonnet truck without any intention of paying for it. Even though it argued that proof of [petitioner]'s sale of the Bluebonnet truck to Recio was not required, the State urged the jury to believe Recio because his testimony about police seizing the truck was consistent with Detective Wagner's testimony. [Petitioner] responded that there were too many inconsistencies in Recio's story for the jury to find him credible. And [petitioner]'s counsel unequivocally stated his

belief that Recio had forged the bill of sale to memorialize a transaction that did not occur as he described.  After deliberation, the jury returned a guilty verdict.

*Zuniga v. State*, 2018 WL 6205870 at *2-3; (ECF No. 18-11 at 6-9).

### 2.    Reviewing False-Testimony Claims

Petitioner asserts that the state trial court erred by denying his motion for mistrial based on Mr Recio's potentially false testimony.  In *Napue v. Illinois*, 360 U.S. 264 (1959), the Supreme Court held that a criminal defendant is denied due process when the State knowingly uses perjured testimony or allows false testimony to go uncorrected at trial.  *See also Giglio v. United States*, 405 U.S. 150 (1972).  A petitioner seeking to obtain relief on such a claim must show that (1) the testimony is false, (2) the State knew that the testimony was false, and (3) the testimony was material.  *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001); *Pyles v. Johnson*, 136 F.3d 986, 996 (5th Cir. 1998).  False testimony is only material if there was a reasonable likelihood that it affected the jury's verdict.  *Giglio*, 405 U.S. at 153-54; *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Furthermore, the trial court's denial of petitioner's motion for a mistrial justifies federal habeas corpus relief only if it was "error . . . so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause."  *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988). In order to obtain relief, petitioner must show that the trial court's error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  In determining harm, this Court should consider (1) the importance of the witness's testimony; (2) whether the testimony was cumulative, corroborated, or contradicted; and (3) the overall strength of the prosecution's case.  *See Hernandez*

*v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (unpublished) (citing *Sherman v. Scott*, 62 F.3d 136, 142 n. 6 (5th Cir. 1995)).

### 3.      Analysis under *Napue*

Petitioner raised this allegation during his direct appeal proceedings, but the TCCA refused petitioner's PDR without written order.  Thus, this Court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018); *Uranga v. Davis*, 82 F.3d 282, 287 n.33 (5th Cir. 2018).  In other words, the Court must look to the last reasoned state judgment that considered and rejected petitioner's false testimony claim when reviewing the allegation under AEDPA's deferential standard.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).

In this case, the last reasoned state court decision was issued by the intermediate court of appeals.  *Zuniga v. State*, 2018 WL 6205870; (ECF No. 18-11).  After setting forth the relevant standard for evaluating false evidence claims, the court concluded petitioner failed to establish that Mr. Recio's testimony was actually false or that his testimony was material:

> [W]hether the record also supports a conclusion that Recio's testimony was false is not as clear.  Neither Ritchie nor Recio was asked to give further, sworn testimony about their conflicting versions of events, although both apparently remained available to be recalled as witnesses before either party rested or the evidence was closed.  Consequently, the only suggestion that Recio's testimony was potentially false is several steps removed from Ritchie, i.e., we are limited to the prosecutor's unsworn statement of what the State's investigator told her about what Ritchie told the State's investigator.  Even if Ritchie had given a sworn statement contradicting Recio's testimony, however, the record presumably would contain competing testimony from Ritchie and Recio and, thus, would be a matter of judging witness credibility, which is not our function under the abuse-of-discretion standard of review.  *See Mechler*, 153 S.W.3d at 439; *Lopez*, 86 S.W.3d at 230.

We are mindful of the authorities cited by [petitioner] that observe that relief does not depend on the defendant's ability to prove that the witness's specific factual assertions are technically incorrect or false. *See, e.g., Ramirez*, 96 S.W.3d at 395. But those same authorities require us to consider whether there is a reasonable likelihood that the false testimony could have affected the jury's judgment, i.e., whether it was material. *Id.* at 396; *Ex parte Castellano*, 863 S.W.2d 476, 485 (Tex. Crim. App. 1993) (observing that finding of false testimony alone is not sufficient; false testimony must also be material); *see Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007) (noting that whether mistrial should have been granted involves most of same considerations that attend harm analysis). We conclude that there is no such likelihood here.

According to [petitioner], Recio's false testimony likely affected the jury's judgment in two ways: (1) it bolstered the State's proof of the element of intent, *see* Tex. Penal Code § 31.03(a) (defining theft as occurring when person "unlawfully appropriates property with intent to deprive the owner of property"), and (2) it gave the jury a false impression of Recio's credibility, *cf. Ramirez*, 96 S.W.3d at 394 (observing that "[w]hen the reliability of a given witness may well be determinative of the guilt or innocence of an accused, nondisclosure of evidence affecting credibility falls within the general rule discussed [above]"). We disagree. The record is replete with evidence of [petitioner]'s intention to deprive Bluebonnet of its truck, apart from Recio's complained-of testimony. Ritchie testified unequivocally that she and [petitioner] went to Bluebonnet with a plan to "take a vehicle" without paying for it, that [petitioner] knew the plan would work because of his experience working at a car dealership, and that the two of them had used the same plan to avoid paying for the Gillman car only six days before [petitioner] drove the Bluebonnet truck off the lot. And, as the prosecutor argued to the trial court in response to [petitioner]'s mistrial motion and to the jury in closing, the testimony about the subsequent sale of the Bluebonnet truck to Recio was not essential proof of any element of theft.

The record also does not support [petitioner]'s assertion that the judgment was affected by the jury's inability to assess Recio's credibility. The record shows a concerted effort by the defense to persuade the jury that Recio was dishonest. For example, [petitioner] used Ritchie's testimony that [petitioner]'s signature on Recio's bill of sale was not authentic as the foundation for extensive cross-examination about the circumstances under which the Bluebonnet truck came into Recio's possession, including a direct question to Recio about whether he forged the bill of sale. [Petitioner] strengthened his credibility challenge with Detective Wagner's testimony that supported at least an inference that Wagner found the sale suspicious. And in closing argument, [petitioner] urged the jury to conclude that Recio was not credible by emphasizing the contradictions between his testimony and Ritchie's testimony about the sales price and other circumstances of the Craigslist. [Petitioner]'s message to the jury was unambiguous—as his counsel stated, "I don't trust Mr. Recio any further than I can throw him . . . [T]hat whole transaction, I think you have to discount to a great degree. I don't believe it occurred the way he [Recio] says it occurred. I think he forged that document [the bill of sale] . . ." On this record, we

cannot conclude that Recio's potentially false testimony was material because of a reasonable likelihood that it could have affected the jury's judgment. S*ee Ramirez*, 96 S.W.3d at 395.

*Id*.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. A state appellate court's determination is entitled to great deference when, as was done in this case, the court conducted a thorough and thoughtful review of the evidence. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). Petitioner has not shown that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Moreover, this Court has independently reviewed the record of these proceedings and finds no affirmative evidence establishing that Mr. Recio's testimony was false or affected the jury's decision. Indeed, the only "evidence" of false testimony is an out-of-court statement by Ms. Ritchie, petitioner's co-conspirator, to the State's investigator, who then told the prosecutor, who then informed the trial court. Neither Ms. Ritchie nor Mr. Recio gave any further testimony about their version of the events, and, even if they did, such testimony would not establish the truth of Ms. Ritchie's out-of-court statement. Further, Mr. Recio's testimony likely had little, if any, effect on the jury's judgment because of the extensive evidence establishing petitioner's intent to deprive Bluebonnet of its truck. This evidence included the testimony of his accomplice, Ms. Ritchie, as well as the testimonies of Detective Wagner and Bluebonnet employees Jorgensen and Atkins. Thus, viewing all of the evidence under the deferential standard that applies on federal habeas review,

petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his allegation.

### 4.     Harmless Error

Assuming the trial court erred in denying petitioner's motion for mistrial, petitioner would still not be entitled to relief because the error was harmless.  Again, in order to be entitled to federal habeas relief, petitioner must demonstrate the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.  Petitioner does not make this showing.

Petitioner contends he was harmed by Mr. Recio's misleading testimony because it was used to establish his intent to deprive Bluebonnet of its vehicle.  But as discussed by the state appellate court, Mr. Recio's testimony concerning the sale of the truck *after* it was stolen from Bluebonnet is not essential proof to any element of theft.  Even if it was, there was other extensive evidence apart from Mr. Recio's testimony establishing petitioner's intent to deprive Bluebonnet of its truck.  Thus, given the relative unimportance of Mr. Recio's testimony coupled with the overall strength of the State's case against petitioner, any error in denying petitioner's motion was harmless and had no prejudicial effect on the jury's ultimate guilty verdict.  *Brecht*, at 637.  Federal habeas relief is therefore denied.

### B.     <u>Extraneous Offense Claim</u> (Claim 2).

Before seeking review in federal court, a habeas corpus petitioner must first present his claims in state court and exhaust all state court remedies through proper adjudication on the merits.  *See* 28 U.S.C. § 2254(b)(1)(A) (stating that habeas corpus relief may not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  The exhaustion requirement is satisfied if the substance of the federal habeas claim was presented to the

highest state court in a procedurally proper manner.  *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004);
*Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002).  In Texas, the highest state court for criminal
matters is the TCCA, and a prisoner must present the substance of his claims to the TCCA in either
a petition for discretionary review or an application for writ of habeas corpus under Texas Code of
Criminal Procedure Article 11.07.  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998);
*Bautista v. McCotter,* 793 F.2d 109, 110 (5th Cir. 1986).

Respondent contends that petitioner's second allegation concerning the trial court's
admission of extraneous-offense evidence is unexhausted and thus procedurally barred from federal
habeas corpus relief.  Indeed, the record confirms petitioner has not sought state habeas corpus relief
and did not present this allegation to the TCCA in his petition for discretionary review.  (ECF Nos.
17-2, 18-14).  Because the allegation is being presented for the first time in this federal habeas
proceeding, it is unexhausted under § 2254(b) and procedurally barred from federal habeas review.

"A procedural default . . . occurs when a prisoner fails to exhaust available state remedies and
the court to which the petitioner would be required to present his claims in order to meet the
exhaustion requirement would now find the claims procedurally barred."  *Nobles v. Johnson*, 127
F.3d 409, 420 (5th Cir. 1997) (citation and internal quotation marks omitted).  Petitioner failed to
exhaust state court remedies with regard to the second allegation raised in his federal habeas petition
before this Court.  Should the Court now require petitioner to return to state court to satisfy the
exhaustion requirement, the TCCA would find the claim procedurally barred under the abuse of the
writ doctrine found in Article 11.07 § 4 of the Texas Code of Criminal Procedure.  Because Texas
would likely bar another habeas corpus application by petitioner, he has committed a procedural
default that is sufficient to bar federal habeas corpus review.  *See, e.g., Bagwell v. Dretke*, 372 F.3d
748, 755-56 (5th Cir. 2004) (holding a petitioner procedurally defaulted by failing to "fairly present"

a claim to the state courts in his state habeas corpus application); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002) (holding unexhausted claims were procedurally barred); *Jones v. Johnson*, 171 F.3d 270, 276-77 (5th Cir. 1999) (same).

Consequently, petitioner is precluded from federal habeas review of this claim unless he can show cause for the default and resulting prejudice, or demonstrate that the Court's failure to consider his claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Busby v. Dretke,* 359 F.3d 708, 718 (5th Cir. 2004). Petitioner did not attempt to demonstrate cause and prejudice to excuse the default in his federal petition, nor did he file a reply to respondent's Answer asserting the procedural-default doctrine. Petitioner has also made no attempt to demonstrate that the Court's denial of the claim will result in a "fundamental miscarriage of justice." Thus, circuit precedent compels the denial of petitioner's second claim as procedurally defaulted.

## IV.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that the showing required under § 2253(c)(2) is straightforward when a district court has rejected a petitioner's constitutional claims on the merits: The petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner

or that the issues presented were 'adequate to deserve encouragement to proceed further.'"
*Miller–El*, 537 U.S. at 336 (citation omitted).

The issue becomes somewhat more complicated when the district court denies relief on procedural grounds. *Id*. In that case, the petitioner seeking COA must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (citing *Slack,* 529 U.S. at 484). In that case, a COA should issue if the petitioner *not only* shows that the lower court's procedural ruling is debatable among jurists of reason*,* but also makes a substantial showing of the denial of a constitutional right.

 A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

### V.  Conclusion and Order

After careful consideration, the Court concludes that petitioner's second claim for relief is unexhausted and therefore procedurally barred from federal habeas review. The Court also concludes that the state court's rejection of petitioner's first claim for relief on the merits during his direct appeal proceedings was neither (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor (2) based on an unreasonable determination of the facts in light of the evidence presented during petitioner's state trial and appellate proceedings. As a result, petitioner's federal habeas corpus petition does not warrant relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and petitioner Zidney Zuniga's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so ORDERED.

SIGNED this 30th day of July, 2020.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE